UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

G.E., the student; and S.B., the student's )
parent and legal guardian, )
)
      Plaintiffs, )
)     No. 3:21-cv-00702
v. )
)
WILLIAMSON COUNTY BOARD OF )
EDUCATION, )
)
      Defendant. )

## <u>MEMORANDUM OPINION</u>

Before the Court is the Magistrate Judge's June 6, 2024 Report and Recommendation ("R&R") (Doc. No. 56) recommending that the Court deny Plaintiffs G.E. and S.B.'s motion for judgment on the administrative record (Doc. No. 51) and affirm the Administrative Law Judge's ("ALJ") decision. G.E., a student, and S.B., his mother, have filed 26 pages of objections to the R&R (Doc. No. 57), to which Defendant Williamson County Board of Education ("WCS") responded (Doc. No. 58), and G.E. and S.B. replied (Doc. No. 61). For the following reasons, the Court will approve and adopt the R&R.

## I.  BACKGROUND

As explained in the thorough R&R, this dispute arises from a series of events that occurred during G.E.'s, fifth, sixth, and seventh school years between himself; S.B.; and WCS. (Doc. No. 56 at 9–21). After a twelve-day administrative hearing on alleged violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1482; Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131–12165; and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 2 U.S.C. § 794(a), the ALJ issued a final order ("Final Order") denying G.E. and S.B. relief. (Doc. No. 1-1 at 3, 39–40). G.E. and S.B. timely appealed

by bringing a civil action against WCS for alleged violations of the IDEA, ADA, and Section 504. (Doc. No. 1).

The Court referred G.E. and S.B.'s case to the Magistrate Judge pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B). (Doc. No. 7 at 1; Doc. No. 30 at 1). On June 13, 2022, G.E. and S.B. moved for judgment on the administrative record. (Doc. No. 24). The motion was fully briefed. (Doc. Nos. 24, 27, 28). On February 27, 2023, the Magistrate Judge issued a R&R on G.E. and S.B.'s motion for judgment on the administrative record (Doc. No. 31), which, after "[c]onsidering the parties' arguments and the administrative record as a whole," recommended "that G.E. and S.B.'s motion for judgment on the administrative record be denied." (Doc. No. 31 at 2). On March 1, 2023, G.E. and S.B. filed their objections (Doc. No. 32), WCS responded 14 days later (Doc. No. 33), and G.E. and S.B. filed a reply (Doc. No. 37).

On March 31, 2023, the Court set aside the R&R, denied G.E. and S.B.'s motion for judgment on the administrative record without prejudice, and remanded the cases to the ALJ for reconsideration. The Court remanded the case because the ALJ's core work product in its Final Order was "lifted almost verbatim from Defendant's filings." (Doc. No. 38 at 2). On remand, the ALJ found that G.E. and S.B. failed to meet their burden of proof that: WCS committed child-find violations for the 2017-2018, 2018-2019, or 2019-2020 school years; G.E. was eligible for special education services under the IDEA during the 2017-2018, 2018-2019, or 2019-2020 school years; G.E. was denied access to programs or services in violation of the ADA and/or Section 504; and G.E. is entitled to compensatory education, reimbursement for placement at Currey Ingram Academy, or any other requested relief. (Doc. No. 48-1 ("Renewed Final Order") at 43–44). Accordingly, the ALJ found WCS prevailed on all of its claims. (Id. at 44). Per the parties' joint request, the Court lifted the administrative stay on June 28, 2023, following the ALJ's renewed

2

determination.  (Doc. Nos. 41, 42).

The next day, G.E. and S.B. filed an amended complaint challenging most of the Renewed Final Order, alleging that WCS violated the IDEA, ADA, and Section 504.[1]  (Doc. No. 44 ¶¶ 126–160).  Specifically, G.E. and S.B. allege WCS: (1) violated the IDEA and Section 504's child-find provisions during G.E.'s fifth and sixth grade years; (2) failed to reasonably accommodate G.E. during his fifth and sixth grade years under the ADA and Section 504; and (3) further violated the IDEA by finding G.E. ineligible for special education services and denying him a free and appropriate public education ("FAPE") in seventh grade.  (Id.).  G.E. and S.B. again moved for judgment on the administrative record (Doc. No. 51), which was fully briefed (Doc. Nos. 51–53). The Court referred the motion to the Magistrate Judge for decision.  (Doc. No. 55).

The Magistrate Judge then issued the instant R&R on June 6, 2024.  (Doc. No. 56).  The R&R states that the "ALJ's opinion erroneously minimized what WCS knew about [G.E.'s] struggles and, in particular, how they related to G.E.'s absences in fifth grade and sixth grade." (Id. at 59). But ultimately, the Magistrate Judge concluded "the record as a whole does not support a finding that WCS's responses to G.E.'s struggles or its assessment of G.E. as a student violated the ADA, § 504, or the IDEA."  (Id. at 59).  As a result, the Magistrate Judge recommends the Court deny G.E. and S.B.'s motion and affirm the ALJ's decision.  (Id. at 2, 60).

## II.  STANDARDS OF REVIEW

Two standards of review govern this case.  First, because the R&R would be dispositive on the matters it covers if accepted, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); Cole v. Yunkins, F. App'x 354, 356 (6th Cir. 2011) (citing Miller v. Currie, 50 F.3d 373, 380 (6th Cir.

---

[1] For ease of reference, the Court will refer to the amended complaint as the "Complaint."

3

1995)); see also Lawhorn v. Buy Buy Baby, Inc., 2021 WL 1063075, at *1 (M.D. Tenn. Mar. 19, 2021) (stating that a "failure to properly, specifically, and timely object to a report and recommendation releases the Court from its duty to independently review the matter"); J.A. v. Smith Cty. School Dist., 364 F. Supp. 3d 803, 812 (M.D. Tenn. 2019) ("[A]n 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context.") (internal quotation and citation omitted). This is because without proper objections to a R&R, the "functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks." Howard v. Sec'y of Health & Hum. Servs., 932 F.2d 505, 509 (6th Cir. 1991).

Second, "[i]n reviewing an ALJ's decision in an IDEA case, district courts apply a 'modified de novo' standard that requires the court 'to make findings of fact based on a preponderance of the evidence contained in the complete record, while giving some deference to the fact findings of the administrative proceedings.'" Somberg on behalf of Somberg v. Utica Cmty. Sch., 908 F.3d 162, 172 (6th Cir. 2018) (quoting Deal v. Hamilton Cty. Bd. of Educ., 392 F.3d 840, 849–50 (6th Cir. 2004)). "When educational expertise is relevant to an ALJ's finding, the reviewing court affords the finding more weight," but the same is not true when such expertise is irrelevant because "the court is as well suited to evaluate the issue as the ALJ." Id. (citing McLaughlin v. Holt Pub. Schs. Bd. of Educ., 320 F.3d 663, 669 (6th Cir. 2003)). This "afford[s] less deference than that given to agencies under the substantial evidence test." Burilovich v. Bd. of Educ. of Lincoln Consol. Sch., 208 F.3d 560, 567 (6th Cir. 2000). Ultimately, "administrative findings in an IDEA case may be set aside only if the evidence before the court is more likely than not to preclude the administrative decision from being justified based on the agency's presumed

4

educational expertise, a fair estimate of the worth of testimony, or both." Id.

## III. LEGAL DISCUSSION

The Court interprets G.E. and S.B. to raise five objections: (1) the R&R lacks a standard of review; (2) the R&R improperly applied an IDEA child-find analysis to G.E. and S.B.'s Section 504 child-find claims, thereby not addressing G.E.'s claim to relief under Section 504; (3) the R&R and Renewed Final Order improperly applied IDEA law to the seventh grade IDEA eligibility claim by focusing too stringently on G.E.'s academic performance; (4) the R&R and Renewed Final Order improperly applied Section 504 law to their seventh grade IDEA identification claim in relation to WCS's failure to identify and evaluate G.E. as possibly disabled; and (5) the R&R omitted or interpreted facts incorrectly.[2] (See Doc. No. 57). The Court will address each objection in turn.

1. G.E. and S.B.'s Objection That The R&R Does Not Have A Standard Of Review Fails.

G.E. and S.B. assert without specificity that the R&R "lacks a standard of review." (Doc. No. 57 at 3). According to G.E. and S.B., "[i]t is impossible to know what the Magistrate Judge used to assess the underlying administrative decision." (Id.). To the extent that this objection qualifies as a specific objection to the R&R requiring the Court's de novo review, Cole, F. App'x 356, the Court disagrees. (See Doc. No. 56 at 2–8). The Magistrate Judge appropriately described

_____

[2] WCS claims the Magistrate Judge "did not provide appropriate deference to the ALJ's findings of fact" with respect to various issues. (Doc. No. 58 at 1–2). To the extent WCS attempts to raise a proper objection that the Court must respond to, it fails here, as WCS's objection was untimely and therefore waived. Fed. R. Civ. P. 72(b)(2) (Within 14 days after being served with a copy of the recommendation disposition, a party may serve and file specific written objections to the proposed findings and recommendations."); Thomas v. Arn, 474 U.S. 140, 155 (1985) (failure to file specific objections to R&R within 14 days of its receipt can constitute waiver of appeal of the matters decided); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004). Even if the Court considered and agreed with WCS's objection, it would not change the outcome of the R&R or the Court's decision here.

5

and applied the legal standards at issue for all G.E. and S.B.'s claims, including the modified standard of review for IDEA claims. (See id.). The Court need not consider this argument further.

2. G.E. and S.B.'s Objection That The Magistrate Judge Applied IDEA Child-Find Law To Their Section 504 Child-Find Claim Fails.

G.E. and S.B. assert that the R&R incorrectly applied the IDEA child-find analysis to their Section 504 child-find claims. (Doc. No. 57 at 5). Based on this incorrect application of law, they argue that the R&R should have, but does not address the substantive harms done to G.E. that separately support his Section 504 claims. (Id.). Notably, G.E. and S.B. do not raise any objection to the Magistrate Judge's analysis of the IDEA child-find claims. (Id. at 5–8). For the reasons stated below, the Court finds G.E. and S.B.'s second objection to be without merit.

A. Legal Standard

As the R&R cogently describes at length, the IDEA and Section 504 accomplish similar statutory work "by prohibiting discrimination against students on the basis of disability," and both have "child find, evaluation and FAPE requirements[.]" P.P. ex rel. Michael P. v. West Chester Area Sch. Dist., 585 F.3d 727, 738–39 (3d Cir. 2009). However, Section 504 and the IDEA are not the same. Importantly, "Section 504 defines disability more broadly than the IDEA, and thus, some students covered by Section 504 are not covered under the IDEA." Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, 269 n.4 (3d Cir. 2014). Section 504 defines disability to include any person who "has a physical or mental impairment which substantially limits one or more major life activities[.]" 34 CFR § 104.3(j)(1)(i). Whereas the IDEA lists thirteen specific categories of educational disabilities and requires that the student need special education and related services because of them. 20 U.S.C. § 1401(3)(A).

The two statutes' child-find obligations are closely related but different. The IDEA's child-find obligation requires school districts to "identif[y], locate[], and evaluate[] . . . children with

6

disabilities" who need "special education and related services." 20 U.S.C. § 1412(a)(3)(A). Upon "notice of behavior that is likely to indicate a disability," school districts have a reasonable amount of time to evaluate "the specific problems a potentially disabled student is having[.]" D.K. v. Abington Sch. Dist., 696 F.3d 233, 250 (3d Cir. 2012) (internal quotations omitted). Under the IDEA, school districts must evaluate the child "in all areas of suspected disability." 20 U.S.C. § 1414(b)(3)(B). Similarly, Section 504's child-find mandate requires "[a] recipient that operates a public elementary or secondary education program or activity" to conduct an evaluation of "any person who, because of handicap, needs or is believed to need special education or related services[.]" 34 C.F.R. § 104.35(a). Accordingly, courts have found that to succeed on either child-find claim, plaintiffs must establish that the school district should have reasonably suspected a student was disabled and in need of special education services. D.K., 696 F.3d at 249 (citing P.P., 585 F.3d at 738).

IDEA and Section 504 child-find claims may be evaluated together, but it depends on the case. When a student's IDEA and Section 504 child-find claims are "plainly different," separate analyses are necessary. B.S.M. v. Upper Darby Sch. Dist., 103 F.4th 956, 964 (3d Cir. 2024) (separate analyses required where crux of student's argument hinged on the statutes' different definitions of disability and claims were different temporally). This is true even if the same conduct serves as the basis for both child-find claims because Section 504 has a broader definition of disability and therefore "covers more students" than the IDEA. Id. at 964–65. However, "*[d]epending on the factual basis for a denial-of-FAPE claim*, the legal differences. . . may be of no moment." Id. (citing J.M. ex rel. C.M. v. Summit City Bd. of Educ., 39 F.4th 126, 146–47 (3d Cir. 2022)). Thus, where the facts of the case render the legal differences between the two statutes immaterial, the denial of the IDEA claim may foreclose relief under Section 504. C.M., 39 F.4th

at 147. In that case, a separate evaluation of the Section 504 child-find claim is unnecessary. Id. (failure of IDEA denial-of-FAPE claim foreclosed Section 504 claim where plaintiffs brought Section 504 claim as a companion to their IDEA claim and offered no additional evidence different from the IDEA claim to support it); see also D.K., 696 F.3d at 253 n.8 ("[O]ur finding that the School District did not deny D.K. a FAPE is equally dispositive of Plaintiffs' § 504 claim.").

B. Analysis

The Court agrees with G.E. and S.B.'s general contention that child-find claims under the IDEA and Section 504 are generally based on different protectable rights with different available relief. G.E. and S.B. are also correct that their motion references (albeit incompletely) each statutes' child-find duties. (Doc. No. 51 at 4–7). But this is not enough to sustain their objection. G.E. and S.B. did not meaningfully "address [Section] 504 separately from the IDEA." (Doc. No. 57 at 7). To the contrary—G.E. and S.B. largely address the child-find claims under both statutes as if they are one in the same. (Doc. No. 51 at 4–14). Of particular importance, G.E. and S.B. address both statutes' requirements that WCS should have reasonably suspected G.E. of having a disability and needing special education services together, such that a determination of whether G.E. had a disability and need for services under one statute is dispositive of that determination for the other. (See, e.g., Doc. No. 51 at 9 (Contending that the parties' November 6, 2017 meeting constituted the first "trigger point for an evaluation[,]" requiring WCS to conduct an evaluation within "sixty days. . . [t]his reasonable time period is also true for Section 504."), 12 (Noting that on March 22, 2018, S.B. met with teachers to relay "psychological issues *in response to their concerns about absences*," "[y]et *no one referred for an IDEA or 504 evaluation*."), 13–14 ("G.E. never did receive an Individualized Education Program ("IEP") with goals for attendance or a 504 Plan for attendance interventions."); 14 (Despite G.E.'s 40 absences in his fifth grade year, "no IEP with an attendance-related goal or a 504-Plan was created to address attendance issues.")).

8

G.E. and S.B. would like this Court to believe their case mirrors that of <u>B.S.M.</u>, 103 F.4th at 964, but their reliance on <u>B.S.M.</u> is misplaced. In <u>B.S.M.</u>, a student and her parent brought action against the Upper Darby school district, alleging child-find violations under the IDEA and Section 504. 103 F.4th at 959, 962. There, B.S.M. received special education services under the IDEA from kindergarten through second grade, and from fourth grade on, she received them under Section 504. <u>Id.</u> at 965. B.S.M.'s eligibility for IDEA or Section 504 services changed over time, based on her different disabilities. <u>Id.</u> at 959–61 (B.S.M. initially being given an IEP for her speech or language impairment, and later being given a 504 plan "to address [B.S.M.'s] social and emotional needs"). The plaintiffs based their Section 504 child-find claim on Upper Darby's failure to identify B.S.M. as a child in need of special education services under Section 504 at the beginning of her education. They based their IDEA child-find claim on Upper Darby's failure to identify B.S.M. as being eligible for IDEA services in her later elementary school years. <u>Id.</u> at 960–61.

Upon appeal of the hearing officer's determination, the district court issued a memorandum opinion only analyzing B.S.M.'s child-find claim under the IDEA because the IDEA claim and Section 504 claim "both concern[ed] the same conduct by the [Upper Darby School] District in allegedly denying a FAPE to" B.S.M. <u>Id.</u> at 962, 964. On appeal, the Third Circuit found the district court erred in only performing an IDEA child-find analysis because B.S.M.'s "claims under both laws [were] plainly different" and "the differences in the statutes' definitions of disability—particularly which emotional issues they encompass—[were] central to the family's argument." <u>Id.</u> at 965. The Third Circuit vacated the grant of judgment on the administrative record and remanded to the district court to conduct a separate analysis for the plaintiffs' Section 504 claims. <u>Id.</u> at 966.

9

This case is more closely aligned with C.M.  In C.M., a student and his parents brought an IDEA child-find claim and Section 504 claim against the Summit City Board of Education.  39 F.4th at 136.  In that case, the plaintiffs alleged that during C.M.'s first and second grade years, when he displayed behavioral issues eventually leading to his diagnoses of autism and attention-deficit/hyperactivity disorder ("ADHD"), the Summit City Board of Education violated its IDEA child-find duties and Section 504 obligations by failing to find C.M. eligible for special needs services.  Id. at 131–36.  The district court granted Summit City Board of Education's motion for summary judgment, finding it satisfied its IDEA child-find obligation and did not violate Section 504.  Id. at 136.  In doing so, it did not analyze the plaintiffs' Section 504 claim separately from their IDEA child-find claim.  Id. at 147.

On appeal, the Third Circuit affirmed the district court's judgment, finding the district court did not need to do a separate analysis of the plaintiffs' Section 504 claim because the plaintiffs did "not present[] any evidence unique to th[e Section 504] claim . . . [T]hey assert[ed] a § 504 cause of action purely as a companion to their [IDEA] denial-of-FAPE claim."  Id.  Thus, the Third Circuit held that it was "not necessary to analyze whether the § 504 claim m[ight have been] brought as a companion to the [IDEA] denial-of-FAPE claim. . . because [the student]'s parents d[id] not succeed on their [IDEA] denial-of-FAPE claim, and they offer[ed] no additional evidence in support of their § 504 claim."  Id.

Here, like in C.M., G.E. and S.B. assert the same mental health struggles and the same set of events, over the same time period, should have made WCS reasonably suspect G.E. had a disability and needed special educational services.  (See Doc. No. 51 at 4–14).  As the Third Circuit has instructed, arguing IDEA and Section 504 child-find claims together because of their similarities does not automatically mean the outcome of the IDEA claims would be dispositive of

10

the Section 504 claims. B.S.M., 103 F.4th at 964–65. However, the similarities of the claims and the evidence that they rely upon here demonstrate that G.E. and S.B.'s IDEA and Section 504 child-find claims fall within the space where the statutes' coverage overlaps. Meaning, if G.E. was eligible for special needs services in his fifth and sixth grade years, he would be under both the IDEA and Section 504. This makes a finding on G.E. and S.B.'s IDEA claims dispositive of their Section 504 claims.

G.E. and S.B.'s single reasonable suspicion argument demonstrates this. Both sets of child-find claims cover G.E.'s fifth and sixth grade years, Doc. No. 51 at 7–14. See C.M., 49 F.4th at 131–36 (C.M.'s IDEA and Section 504 claims both relating to C.M.'s first and second grade years). Both claims rely on a single set of mental health struggles, in that G.E. and S.B. argue WCS should have reasonably suspected that G.E. was disabled and in need of special services because of his anxiety, Doc. No. 51 at 7–14.[3] See C.M., 49 F.4th at 131–36 (C.M.'s IDEA and Section 504 claims both relating to his autism and ADHD). Further, both claims rely on the same set of evidence that WCS should have reasonably suspected G.E. as needing IDEA and Section 504 services, including: the November 6, 2017 meeting among "concerned teachers and G.E.'s mother[;]" Vanderbilt University Medical Center records; March 7, 2018 email correspondence between G.E.'s mother and WCS's Jennifer Randolph and Ms. Randolph's subsequent sharing of that correspondence with other teachers; the March 8, 2018 meeting between G.E., S.B., and G.E.'s principal; the March 22, 2018 meeting between S.B. and G.E.'s teachers; G.E.'s significant school

---

[3] To the extent G.E. and S.B.'s "reasonable suspicion" analysis references other mental illnesses as possibly qualifying disabilities, the Court understands them to relate only to their IDEA child-find claims. (See Doc. No. 51 at 15–17 (describing the mental illnesses that made G.E. eligible for IDEA special education services under the emotional disturbance or other health impairment categories)). By contrast, G.E. and S.B. only assert G.E.'s anxiety made him eligible for Section 504 special education services. (Id. at 18).

absences; and Ms. Stewart's "Record of Intervention[,]" Doc. No. 51 at 8–14. See C.M., 49 F.4th at 147 (separate Section 504 analysis not necessary where plaintiffs did not offer additional evidence apart from their IDEA evidence to support their Section 504 claim). And G.E. and S.B. argue both claims are entitled to the same remedy, Doc. No. 51 at 27.

Moreover, the Magistrate Judge did not "appl[y] an *IDEA Child Find* analysis to the 504 Child Find failure to evaluate claim[,]" as G.E. and S.B. contend. (Doc. No. 57 at 5). Rather, the Magistrate Judge conducted a two-part analysis. The Magistrate Judge first applied the proper legal standard in evaluating G.E. and S.B.'s IDEA child-find claims, finding G.E. and S.B. did not carry their burden of showing G.E. needed special education services "so as to trigger WCS's child-find obligation under the IDEA." (Doc. No. 56 at 43). G.E. and S.B. implicitly concede this by not objecting to that part of the Magistrate Judge's analysis. The Magistrate Judge then proceeded to properly apply the relevant IDEA and Section 504 case law to G.E. and S.B.'s Section 504 child-find claims. In that analysis, the Magistrate Judge correctly determined it unnecessary to evaluate the Section 504 claims separately. (Doc. No. 56 at 30–31). The R&R aptly notes:

> G.E. and S.B.'s child-find claims under § 504 are based on the same facts and seek the same relief as their IDEA child-find claims. (Doc. No. 44.) Courts typically find that, in this circumstance, denial of the IDEA claims is dispositive of the § 504 claims. *See, e.g., J.M. ex rel. C.M. v. Summit City Bd. of Educ.*, 39 F.4th 126, 147 (3d Cir. 2022) (holding that, where "parents do not succeed on their [IDEA] denial-of-FAPE-claim, and they offer no additional evidence in support of their § 504 claim[,]" "it is not necessary to analyze whether the § 504 claim may be brought as a companion to the denial-of-FAPE-claim" because "the failure of the denial-of-FAPE claim would still foreclose the § 504 claim"); *D H H ex rel. Rob Anna H. v. Kirbyville Consol. Indep. Sch. Dist.*, No. 1:18-CV-00120, 2020 WL 1644365, at *3 (E.D. Tex. Jan. 7, 2020) (finding that denial of IDEA claim was dispositive of § 504 claim "as both claims arise from the same factual content and seek the same relief"), *report and recommendation adopted*, 2020 WL 1638061 (E.D. Tex. Apr. 1, 2020); *cf. Culley*, 758 F. App'x at 306 ("Because both the IDEA Child Find and the Section 504 claims involve what [the school district] knew or should have known at what point in time, we will analyze them together.").

(Doc. No. 56 at 43–44). Both the Magistrate Judge's articulation and evaluation of the applicable

12

law are correct.  As discussed above, to prove their Section 504 child-find claims, G.E. and S.B. needed to show G.E. needed or was believed to have needed special education services.  34 C.F.R. § 104.35(a); see D.K., 696 F.3d at 249 (plaintiffs must establish reasonable suspicion a student needed special education services).  G.E. and S.B.'s IDEA and Section 504 child-find claims are so similar in alleged disability, time period, and evidentiary bases that they provide no evidence supporting a finding that G.E. needed special education services under Section 504 that would not have already been considered in the Magistrate Judge's IDEA analysis.  (Doc. No. 51 at 7–14). The Magistrate Judge therefore did not err in determining that G.E. and S.B.'s failure to prove their IDEA child-find claims is dispositive of their Section 504 child-find claims.  (Doc. No. 56 at 40–41, 43–44).  Given this, it was proper for the Magistrate Judge to not address G.E.'s claims for relief under Section 504.  (Id.).

Even if this Court were to find the Magistrate Judge erred by not conducting a separate Section 504 child-find analysis, such independent evaluation would render the same result. Notably missing from G.E. and S.B.'s reasonable suspicion argument is basic discussion of necessary elements of their Section 504 claims.  For instance, G.E. and S.B. do not explain why WCS should have reasonably suspected G.E. of a disability, or handicap, under Section 504, if not the IDEA.  In fact, G.E. and S.B.'s reasonable suspicion argument does not discuss how G.E.'s anxiety substantially limited *any* major life activity, be it learning, thinking, concentrating, or otherwise, as required for Section 504 claims.[4]  See 34 C.F.R. § 104.3(j)(1)(i).  G.E. and S.B. do not even use the word "handicap" or the phrase "major life activity" in their lengthy reasonable

---

[4] G.E. and S.B. mention learning, thinking, and concentrating may be the "major life activities" impacted by G.E.'s anxiety in their analysis on Section 504 eligibility.  However, they do not proffer any evidence or argument as to whether and how any of these major life activities were impacted by G.E.'s anxiety in their reasonable suspicion analysis.  (Doc. No. 51 at 17–18).

suspicion argument. (Doc. No. 51 at 7–14). Similarly, if G.E. and S.B. had any evidence or argument as to why G.E. needed services under Section 504 because of a substantial limitation to one of his major life activities, they failed to mention as much in their briefing. (Id.) G.E. and S.B. do not cite, and this Court does not find, evidence that G.E. and S.B. established *either* G.E.'s handicap or his need for services sufficiently to establish a Section 504 child-find violation. 34 C.F.R. § 104.35(a). These failures are legally dispositive of their Section 504 claims.

Accordingly, G.E. and S.B.'s second objection is overruled.

3. G.E. and S.B.'s Objection That The Magistrate Judge and ALJ Improperly Applied IDEA Law to Their Seventh Grade Eligibility Claim Fails.

G.E. and S.B.'s third objection contends the Magistrate Judge and ALJ improperly applied IDEA law in evaluating G.E.'s eligibility for an IEP by the time of his September 2019 evaluation. G.E. and S.B.'s objection reasons that because the R&R and Renewed Final Report erred by applying a "rule-out of an IEP for mental health [disability] based upon too stringent reliance on academic performance[,]" to G.E.'s eligibility claim, both ignore G.E.'s IDEA eligibility under "emotional disturbance" ("ED") or "other health impairment" ("OHI") and neither reach the relief G.E. and S.B. are entitled to. (Doc. No. 57 at 11–14). They raised the same argument to the Magistrate Judge regarding the ALJ's analysis in the Renewed Final Order. (Doc. No. 51 at 33–35). Like the Magistrate Judge, we find G.E. and S.B.'s third objection is without merit.

A. Legal Standard

As referenced at length in the R&R, the IDEA assigns school districts the responsibility "to determine the educational needs of" children with disabilities during an "initial evaluation" process. 20 U.S.C. § 1414(a)(1)(C)(i)(II). In conducting these evaluations, school districts must "use a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information," id. § 1414(b)(2)(A), and shall "not use any single measure or assessment

14

as the sole criterion for determining whether a child is a child with a disability[.]" Id. §

1414(b)(2)(B).

The IDEA defines a "child with a disability" to include, among other qualifying conditions,

a child with ED or OHI "who, by reason thereof, needs special education and related services." 20

U.S.C. § 1401(3)(A)(i)–(ii). The federal regulations further define "emotional disturbance" as:

> a condition exhibiting one or more of the following characteristics over a long
> period of time and to a marked degree that *adversely affects a child's educational
> performance*—
>> (A) An inability to learn that cannot be explained by intellectual, sensory,
>> or health factors[;]
>> (B) An inability to build or maintain satisfactory interpersonal relationships
>> with peers and teachers[];]
>> (C) Inappropriate types of behavior or feelings under normal
>> circumstances[;]
>> (D) A general pervasive mood of unhappiness or depression[;] or
>> (E) A tendency to develop physical symptoms or fears associated with
>> personal or school problems.

34 C.F.R. § 300.8(c)(4) (emphasis added). The federal regulations define "other health

impairment" as:

> having limited strength, vitality, or alertness, including a heightened alertness to
> environmental stimuli, that results in limited alertness with respect to educational
> environment, that—
>> . . .
>> (i) [i]s due to chronic or acute health problems such as asthma, attention
>> deficit disorder or attention deficit hyperactivity disorder, diabetes,
>> epilepsy, a heart condition, hemophilia, lead poisoning, leukemia, nephritis,
>> rheumatic fever, sickle cell anemia, and Tourette syndrome; and
>> (ii) *[a]dversely affects a child's educational performance*.

34 C.F.R. § 300.8(c)(9) (emphasis added). IDEA eligibility under both ED and OHI therefore

require a showing that a student's disability adversely affected the student's educational

performance. "However, neither the IDEA nor the federal regulations define the terms 'need

special education' or 'adverse effect on educational performance,' leaving it to each State to give

substance to these terms." J.D. ex rel. J.D. v. Pawlet Sch. Dist., 224 F.3d 60, 66 (2d Cir. 2000).

The Magistrate Judge correctly discusses that the relevant Tennessee educational regulations do not give substance to these terms. (Doc. No. 56 at 49). The Sixth Circuit has addressed the meaning of "educational performance," holding "'educational performance' may encompass more than academic achievement[,]" but the plain meaning "suggests school-based evaluation." Q.W. ex rel. M.W. v. Bd. of Educ. of Fayette Cnty., 630 F. App'x 580, 582–83 (6th Cir. 2015). The Sixth Circuit has not given meaning to the term "needs special education."

### B. Analysis

The Magistrate Judge correctly articulated and applied IDEA law in determining G.E. and S.B. did not carry their burden of showing that G.E. was IDEA eligible in September 2019. G.E. and S.B.'s characterization of the Magistrate Judge's legal analysis is inaccurate. The Magistrate Judge did not "dispositively" "rule out" G.E.'s eligibility for an IEP based on his academic performance. Rather, the Magistrate Judge followed the Sixth Circuit's instruction to evaluate adverse effect on educational performance through, in part, school-based evaluation to determine whether a student is IDEA eligible. Q.W. ex rel. M.W., 630 F. App'x at 582–83. This is required to determine both OHI and ED IDEA eligibility. 34 C.F.R. §§ 300.8(c)(4), (9).

The Magistrate Judge addressed this issue for almost ten pages, properly placing G.E.'s academic performance within the context of his mental health conditions, his functioning at school, and other behaviors to determine whether he was IDEA eligible based upon his evaluation in September. (Doc. No. 56 at 45–54). In doing so, the Magistrate Judge considered the relevant case law, distinguished G.E. and S.B.'s cited cases from the facts at hand and concluded that G.E. and S.B. did not show "by a preponderance of the evidence that G.E.'s mental health conditions adversely affected his educational performance within the meaning of the IDEA and its federal and state implementing regulations." (Id. at 52). The Magistrate Judge's legal analysis, considering but not relying solely on G.E.'s school-based performance, was appropriate. 20

U.S.C. §§ 1414(b)(2)(A), (B); Q.W. ex rel. M.W., 630 F. App'x at 582–83.

The ALJ could have been clearer as to how adverse effects on educational performance impacts the IDEA eligibility analysis. (Doc. No. 48-1 at 28–29 (failing to describe the nuances surrounding educational performance and IDEA eligibility)). Still, the ALJ did properly apply IDEA law by considering G.E.'s school-based performance and his social and behavioral circumstances in evaluating G.E.'s academic performance for adverse effects. (Doc. No. 48-1 at 37–40). The ALJ's focus on G.E.'s academic performance is not legal error. It is a required part of the analysis to determine G.E.'s IDEA eligibility under ED and OHI.

Accordingly, the R&R and Renewed Final Order did not need address G.E. and S.B.'s alleged harms. The Court overrules G.E. and S.B.'s third objection.

> 4. G.E. and S.B.'s Objection That The Magistrate Judge and ALJ Improperly Applied Section 504 Law To G.E. and S.B.'s Seventh Grade Identification Claim Fails.

G.E. and S.B.'s final IDEA claim and objection relating to it are convoluted. The Court understands G.E. and S.B.'s final IDEA claim to be that WCS violated the IDEA for the remainder of the 2019-2020 school year, after G.E.'s September 2019 evaluation, by failing to identify G.E. as a disabled student needing special education services. (See Doc. No. 51 at 36 ("Child find . . . is an *ongoing* activity that [school districts] should be engaged in throughout the year[.]"), 39 (describing WCS's "Failure to Identify under IDEA"); Doc. No. 44 ¶ 162 ("Reimbursement for private school expenses may be an appropriate remedy whenever a school district has failed to provide a FAPE to a student, including when it has failed in its child find obligations[.]")). The Court therefore interprets G.E. and S.B.'s final IDEA claim to be a denial-of-FAPE due to an IDEA child-find violation claim.

The Court understands G.E. and S.B.'s fourth objection to argue that because the Magistrate Judge and ALJ incorrectly applied Section 504 law relating to WCS's failure to identify

(and evaluate) G.E. after G.E.'s September 2019 evaluation, neither properly addressed G.E. and S.B.'s entitlement of relief.[5]  G.E. and S.B. assert: (1) the finding that WCS should not have identified G.E. as IDEA-eligible when he was receiving, in their view, "specially designed instruction" indicates "[t]his case suffers *not* from its facts but from courts applying the wrong laws[,] (Doc. No. 57 at 19); and (2) "[i]nstead of following the IDEA, the ALJ [and Magistrate Judge] found that this specially designed instruction [WCS provided G.E.] could be considered 'best practice techniques that can be used with either general education or special education students[,]'" which "is the converse of the previous error—this time, it substitutes [Section] 504 considerations for the IDEA[,]" (id. at 19–20).  Neither argument is convincing.

A.  Legal Standard

As discussed above, see supra, Section III.2.A., and at length in the R&R (Doc. No. 56 at 3–4), the IDEA's child-find obligation requires school districts to identify and evaluate children with suspected disabilities who need special education and related services.  See 20 U.S.C. § 1412(a)(3)(A).  To establish a violation of the IDEA's child-find mandate, "the claimant must show that school officials overlooked clear signs of disability and were negligent in failing to order testing, or that there was no rational justification for not deciding to evaluate."  Ja. B. v. Wilson Cnty. Bd. of Educ., 61 F.4th 494, 502 (6th Cir. 2023) (internal citation omitted).

Upon noticing behavior from a student that likely indicates disability, school districts must then identify and evaluate that student within a reasonable amount of time.  D.K., 696 F.3d at 250.  Whether a school district is "negligent in failing to order testing" within a reasonable amount of time or had "no rational justification for not deciding to evaluate" is case specific.  Ja. B., 61 F.4th

---

[5] G.E. and S.B.'s motion and the R&R discuss WCS's obligation as one of identification, but the IDEA requires identification *and* evaluation.  20 U.S.C. § 1412(a)(3)(A).  These obligations are evaluated together.  See D.K., 696 F.3d at 250 (discussing identification and evaluation together).

at 502. For instance, "[w]hen a school district has conducted a comprehensive evaluation and concluded that a student does not qualify as disabled under the IDEA, the school district must be afforded a reasonable time to monitor the student's progress before exploring whether further evaluation is required." Ridley Sch. Dist. v. M.R. ex rel. E.R., 680 F.3d 260, 273 (3d Cir. 2012). Further, "a school [does] not violate its child-find responsibilities by first attempting other interventions for a student instead of immediately referring for an evaluation." Ja. B., 61 F.4th at 503.

B. Analysis

Because G.E. and S.B. are confused about their own IDEA claim relating to the post-September 2019 evaluation period, their attempts to argue that the Magistrate Judge and ALJ applied the wrong law are as well. G.E. and S.B. assert the R&R uses "[Section] 504 to defeat [G.E. and S.B.'s] IDEA claim." (Doc. No. 57 at 2). G.E. and S.B. support their assertion by claiming WCS gave G.E. IDEA services, such as "specially designed instruction," without being found eligible under the IDEA. G.E. and S.B. cite to the IDEA's definition of "special education" as containing "specially designed instruction" and "homebound placement" under the IDEA, Tennessee Code detailing the requirements for "homebound instruction," and case law demonstrating that Section 504 accommodations are not a substitute for IEPs under the IDEA to support this. (Doc. No. 57 at 15–20). These pointed declarations of unobjectionable facets of IDEA and Tennessee law miss the point. In turn, G.E. and S.B. suggest a legal analysis that requires courts to find a *de facto* IDEA child-find violation when it appears a student may have been given educational instruction that resembles specially designed instruction, and a school district does not immediately identify and re-evaluate. This argument is not consistent with IDEA law, as it shrinks the various elements needed to establish an IDEA child-find claim into a single-factor analysis. Ja. B., 61 F.4th at 503 (a plaintiff must show school officials overlooked clear

19

signs of a disability and were negligent in failing to order resting or had no rational justification for not evaluating a student); D.K., 696 F.3d at 249 (a plaintiff must show the school district should have reasonably suspected a student was disabled and needed services).

Both the ALJ and the Magistrate Judge apply the proper IDEA law to G.E. and S.B.'s seventh grade IDEA child-find claim. As to the Renewed Final Order, the ALJ concluded G.E. and S.B. did not establish G.E.'s IDEA eligibility after the September 2019. G.E. and S.B.'s relied upon evidence did not explain the length of time G.E. showed some criteria for ED, nor did it establish whether G.E.'s possible disability impacted G.E.'s educational performance. (Doc. No. 48-1 at 41–42). The ALJ was correct in evaluating these factors to determine whether G.E. established an eligible disability under the IDEA. See supra, Section III.3. Further, the ALJ was not convinced that WCS providing homebound instruction "establish[ed] a violation of child find or FAPE." (Id. at 41). In conducting this analysis, the ALJ applied correct IDEA law in determining G.E. and S.B. did not establish G.E. exhibited clear signs of a disability or a need for services, as required to establish an IDEA child-find claim. Ja. B., 61 F4th at 502; see supra, Section III.3.A. The ALJ properly evaluated G.E. and S.B.'s seventh grade IDEA child-find claim under the IDEA.

The Magistrate Judge, however, evaluated both G.E.'s purported IDEA eligibility and WCS's response to it due to the convoluted nature of G.E. and S.B.'s briefing. G.E. and S.B. argued in their briefing that: (1) G.E.'s need for services was demonstrated through his homebound instruction; and (2) WCS failed to identify his IDEA eligibility. (Doc. No. 51 at 36–41). The Magistrate Judge correctly cited and applied the proper IDEA child-find legal standard to the facts at hand by evaluating both G.E.'s purported IDEA eligibility and WCS's response to that alleged eligibility given the circumstances. First, the Magistrate Judge properly disposed of G.E. and

S.B.'s argument that homebound instruction, or best practices, necessitated a finding of G.E. having a need for services under the IDEA. (Doc. No. 57 at 56–57). The R&R correctly notes that "the fact that an instructor used teaching techniques that could be considered both best practices and special education services do[es] not require a finding that the student needed special education services." (Id.).

Second, while the Magistrate Judge could have ended her analysis with her determination that G.E. and S.B. did not establish G.E.'s IDEA eligibility, she also addressed G.E. and S.B.'s assertions that WCS violated its obligation to identify and re-evaluate G.E. In doing so, the R&R properly concludes that G.E. and S.B. did not show that WCS violated the IDEA because WCS did not have a reasonable time to identify and re-evaluate G.E, nor did G.E. and S.B. cite authority indicating G.E.'s homebound instruction automatically obligated WCS to re-evaluate G.E. (Id. at 57). The Magistrate Judge reasoned "it had only been a few months since G.E. was evaluated and determined ineligible under [the] IDEA[,]" and WCS argued "it was trying to evaluate G.E.'s education needs by conducting another clinical psychological evaluation and by speaking with G.E.'s treating psychiatrist[.]" (Id. at 57–58). Both considerations are proper applications of IDEA precedent in evaluating whether WCS was negligent in failing to order more testing for G.E. or whether there was no rational justification for WCS not re-evaluating G.E. Ja. B., 61 F.4th at 502, 503 (other interventions may be used before re-evaluation); see Ridley, 680 F.3d at 273 (school districts must be afforded a reasonable time to monitor a student's progress after a comprehensive evaluation before re-revaluation). It was also proper for the Magistrate Judge to rely on S.B.'s refusal "to participate in further meetings about G.E.'s educational needs and refus[al] to let WCS's expert conduct a clinical psychological evaluation of G.E. until the ALJ ordered her to do so in August 2020[,]" (Doc. No. 56 at 57–58), despite some of those re-evaluation

21

requests relating to G.E.'s possible qualification for Section 504 services. The Magistrate Judge appropriately relied on S.B.'s refusal to participate in the process of further evaluating G.E. after his September 2019 evaluation to demonstrate the reasonableness of WCS's response to G.E.'s supposed need for services. <u>Ja. B.</u>, 61 F.4th at 502. None of this is an incorrect application of IDEA law, or an improper application of Section 504 law.

Because the R&R properly applies IDEA law to G.E.'s IDEA identification claim, it did not need to reach G.E. and S.B.'s argument for more relief. G.E. and S.B.'s fourth objection is also overruled.

5. <u>G.E. and S.B.'s Fifth Objection To Factual Issues With The R&R Fails.</u>

G.E. and S.B. assert various factual contentions with the R&R. These objections all suffer from the same errors. Rather than explain how the Magistrate Judge failed to evaluate factually the ALJ's decision under the appropriate standard, G.E. and S.B. take issue with the R&R's outcome and point to evidence that supports their preferred interpretation and resolution. (<u>See, e.g.</u>, Doc. No. 57 at 20–22). In doing so, G.E. and S.B. often recite their prior arguments and ask this Court to duplicate the work of both the ALJ and Magistrate Judge to come to the opposite result. Such an approach cannot demonstrate legal error, <u>Howard</u>, 932 F.2d at 509, even on *de novo* review.

Consider a few examples. For instance, G.E. and S.B. argue with respect to their seventh grade IDEA eligibility claim that "[h]aving focused so heavily on the academic-performance side, the Report omits undisputed evidence of G.E.'s vast emotional struggles inside the school by September 19, 2019." (Doc. No. 57 at 12). G.E. and S.B. provide no explanation as to why their preferred evidence warrants setting aside the R&R's or the Renewed Final Order's administrative findings. (Doc. No. 57 at 10–12). By failing to turn the corner and state the gravamen of their argument, G.E. and S.B. have not properly objected to the R&R or the Renewed Final Order

22

requiring this Court's review. However, even upon conducting a *de novo* review, the Court finds G.E. and S.B.'s purported objection unsuccessful. As discussed above, see supra, Section III.3.B, the Magistrate Judge applied the appropriate legal standard for evaluating both G.E.'s academic performance and his emotional struggles within the context of G.E. and S.B.'s seventh grade IDEA eligibility claim.

Further, the Magistrate Judge properly applied a modified *de novo* standard of review to the ALJ's findings of fact relating to this claim. Somberg, 908 F.3d at 172. As an initial matter, the Magistrate Judge did include some of the supposed omitted evidence as to G.E.'s emotional struggles in the R&R, because the ALJ included them in his analysis. (Doc. No. 56 at 47 (the R&R quoting from the Renewed Final Order, which mentions G.E.'s anxiety manifesting in "a panic attack on August 22, 2019")). In fact, the ALJ included many of the findings G.E. and S.B. contend were omitted from consideration in his Renewed Final Order. (Doc. No. 48-1 at 20 (noting that on August 22, 2019, G.E. told Nurse Weingartner and Counselor Stepanic he had a panic attack and a dream about zombies), 21 (noting on September 12, 2019, G.E. told Nurse Weingartner he was anxious)).

To the extent the Magistrate Judge did not include the other evidence G.E. and S.B. cite to in their objection in her analysis, it was proper to exclude it unless that evidence more likely than not precluded the ALJ's ineligibility decision "from being justified based on the agency's presumed educational expertise, a fair estimate of the worth of testimony, or both." Burilovich, 208 F.3d at 567. That is not the case here. The evidence G.E. and S.B. contend was improperly omitted, instances of G.E. having panic attacks and documentation of the same, does not indicate that the ALJ's finding that G.E. was ineligible under the IDEA was unjustifiable. Id. Rather, the ALJ did consider evidence of G.E.'s emotional struggles where he found it credible, Doc. No. 48-

23

1 at 20, 38, and his educational expertise is directly relevant to the evaluation of those struggles in the context of G.E.'s purported eligibility. Somberg, 908 F.3d at 172. Considering that the ALJ weighed evidence of G.E.'s emotional struggles, social interactions, and academic performance in evaluating his eligibility, Burilovich, 208 F.3d at 567, not just "the academic-performance side," as G.E. and S.B. contend, G.E. and S.B. do not point to any evidence negating the ALJ's justifiable ineligibility conclusion. Id. Accordingly, the Magistrate Judge properly omitted the facts at issue.

Similarly, G.E. and S.B. assert various complaints with how the R&R characterizes the WCS expert testimony and WCS's requests for re-evaluation of G.E. with respect to their seventh grade IDEA child-find claim. First, they point to Dr. Vance Sherwood's expert testimony that, in their view, supports a finding of IEP eligibility. (Id. at 21–22). Next, they contend the R&R references "a psychological evaluation by Dr. Vance [Sherwood] and the parent refusing to participate in a 504 meeting. . . [b]ut seventh grade does not concern 504 at all." (Doc. No. 57 at 20–21). Finally, they note the R&R "has the timing backwards" regarding when the G.E. was evaluated and placed at Currey Ingram. (Id. at 22). G.E. and S.B. again omit how this evidence or a corrected record would affect the Renewed Final Order or the R&R.

Still, upon conducting a *de novo* review, G.E. and S.B.'s objection is unsuccessful. Again, as previously discussed, see supra, Section III.4.B, the Magistrate Judge properly applied IDEA law to G.E. and S.B.'s seventh grade IDEA child-find claim. And again, the Magistrate Judge properly gave the ALJ's findings of fact due deference under the modified *de novo* standard of review. Burilovich, 208 F.3d at 567. For instance, contrary to G.E. and S.B.'s characterization that Dr. Sherwood's testimony demonstrated G.E.'s eligibility, the ALJ properly found that Dr. Sherwood concluded that by late summer of 2019, G.E. may had begun to meet the criteria for ED, but that alone was not enough to establish G.E.'s IDEA eligibility for ED at that time. (Doc. No.

56 at 55 (citing the Renewed Final Order's discussion of Dr. Sherwood's testimony)). G.E. and S.B. do not point to any evidence in the record that suggest the Magistrate Judge should have disturbed this factual analysis. Burilovich, 208 F.3d at 567. Still, the Court has reviewed Dr. Sherwood's testimony and agrees with the ALJ, Magistrate Judge, and WCS that Dr. Sherwood stated G.E. may have met the criteria for ED in the summer of 2019, but did not state G.E. had the condition since then. (Doc. No. 15-11 at 360 (Dr. Sherwood testifying that "I said that he would not have met ED criteria before the end of August in 2019 at the earliest . . . he did not meet it, in my opinion, at the end of August, but that [] is the very earliest that the issue could have come up and been taken seriously.")). G.E. and S.B.'s mischaracterization of Dr. Sherwood's testimony did not require the Magistrate Judge to find the ALJ's decision with respect to G.E.'s ineligibility unjustified such that his findings should be set aside, and the facts reconsidered. Burilovich, 208 F.3d at 567.

G.E. and S.B.'s objection to the R&R's characterization of WCS's request for Dr. Sherwood to conduct a psychological evaluation of G.E. and S.B.'s refusal to participate in requests for G.E.'s evaluation fares no better. While G.E. and S.B. are correct that WCS attempted to schedule Section 504 evaluations with them after the September 2019 IEP meeting, not further IDEA evaluations, the Magistrate Judge and ALJ correctly characterizes this evidence. (Doc. No. 56 at 20–21, 55). And the ALJ and Magistrate Judge correctly characterized S.B.'s refusal to let Dr. Sherwood evaluate G.E. for IDEA eligibility in late summer 2020. (Id. at 21, 58). Further, the Magistrate Judge properly concluded S.B.'s refusal to participate in the assessment of G.E.'s educational needs served in support of, but was not the only rationale for, her conclusion that G.E. and S.B. did not show WCS violated its child-find duty. (Id. at 58). The Magistrate Judge cited to S.B.'s lack of cooperation to lend credence to WCS's arguments that it was trying to evaluate

25

G.E.'s needs and was appropriately attempting other interventions before immediately seeking IDEA re-evaluation. (Id.). This, again, is a proper application of IDEA child-find law, see supra, III.4.B, and G.E. and S.B.'s misleading characterizations of the R&R do not merit a complete review of the entire record.

Finally, as to G.E. and S.B.'s contention that the Magistrate Judge was incorrect as to the timing of G.E. and S.B. turning down a September 2020 IEP meeting, the Court finds this argument of no consequence. The Court notes that the ALJ articulated the timing of events relating to Dr. Sherwood evaluating G.E. in August 2020 the same way that G.E. and S.B. do in their briefing. (See Doc. No. 48-1 at 27, 41). This is of particular significance, given there is no indication in the R&R that the Magistrate Judge did not give these factual findings by the ALJ their due deference. (Doc. No. 56 at 54–56 (recounting the ALJ's IDEA analysis of G.E. and S.B.'s seventh grade IDEA child-find claim in full)). Still, the Court need not dig through the factual record to determine the merit of this contention, as it has no import on the Magistrate Judge's analysis of their seventh grade IDEA child-find claim. (See Doc. No. 56 at 58 (noting S.B. refused Section 504 evaluation after G.E.'s September 2019 IEP evaluation and refused Dr. Sherwood's IDEA evaluation in the summer of 2020, but not referencing WCS's requested IDEA eligibility meeting in September 2020)).

The Court need not be redundant by trudging through each of G.E. and S.B.'s factual contentions. As previously stated, this error pervades each one. At bottom, G.E. and S.B. have failed to properly raise objections as to the purported factual issues with the R&R, and the Court has no duty to independently review further. See, e.g., Miller, 50 F.3d at 380; Lawhorn, 2021 WL 1063075, at *1.

## IV. CONCLUSION

Accordingly, and having conducted the *de novo* review required by Rule 72 of the Federal

Rules of Civil Procedure, G.E. and S.B.'s Objections (Doc. No. 57) are overruled. The Court will approve and adopt the R&R (Doc. No. 56), and, accordingly, G.E. and S.B.'s Motion for Judgment on the Administrative Record (Doc. No. 51) will be denied.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE